REGINALD TERRELL, ESQ.
THE TERRELL LAW GROUP
Post Office Box 13315, PMB #148
Oakland, California 94661
Telephone: (510) 237-9700
Facsimile:  (510) 237-4616
Email: Reggiet2@aol.com

SYDNEY JAY HALL
LAW OFFICES OF SYDNEY JAY HALL
1308 Old Bayshore Highway, #220
Burlingame, California 94010
Telephone: (650) 342-1830
Facsimile:   (650) 342-6344
Email: Sydneyhalllaw@yahoo.com

Attorneys for Plaintiffs
Jeannie Johnson

FILED
SEP 12 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNIE JOHNSON, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NESTLE PURINA PET CARE CO., WAGGIN' TRAIN, LLC, WAL-MART STORES, INC. and SAM'S CLUB, INC., <br><br> Defendants. | CASE NO.: C12-4774 <br><br> **CLASS ACTION COMPLAINT** <br><br> DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT**

Plaintiff Jeannie Johnson brings this class action complaint against Nestle Purina Pet Care Company, Waggin' Train, LLC, Wal-Mart Stores, Inc. and Sam's Club, Inc. to seek redress for herself and other individuals similarly situated and injured by the sale of contaminated

CLASS ACTION COMPLAINT                                                                 1

chicken jerky pet food throughout the United States.

## NATURE OF THE CASE

1. Nestle Purina Pet Care Company ("Nestle Purina") is a company engaged in the business of manufacturing, producing marketing, distributing, advertising and selling dog food and dog treats and it has been in the business of doing so since 1957. It has also spent millions of dollars advertising and promoting its pet food products. It holds itself out to the public as a manufacture of safe, wholesome, nutritious and high-quality pot food.

2. As of February of 2012 over 500 consumers who purchased chicken jerky dog treats complained to the FDA concerning the safety of Waggin' Train Chicken Jerky dog food treats.

3. These treats, when ingested by a dog, cause it to suffer an assorted combination of health issues including but not limited to seizures, vomiting, diarrhea, incontinence, excessive thirst, neurological problems including an awkward tilt of the pet's head, loss of balance, pain, and ultimately renal problems, respiratory problems and or death.

4. Nestle Purina's actions in selling the contaminated food and failing to issue a recall and continuing to market and sell the chicken jerky treats are reckless and in breach of its duties and warranties to its customers.

5. Defendants actions were a proximate cause of injury and or death of numerous pets, including plaintiff Jeannie Johnson's Sterling, as more fully described below.

6. On behalf of a nationwide class, Jeannie Johnson seeks redress for defendants misconduct.

## PARTIES

7. Plaintiff Jeannie Johnson is a citizen and resident of Alameda County, California.

8. Defendant Nestle Purina is a Missouri corporation with its principal place of business at Checkerboard Square, St. Louis, Missouri. It does business in California and sells its pet products throughout California.

9. Defendant Wal-Mart Sores, Inc. and its wholly owned subsidary Sam's Club, Inc. are Arkansas corporations with their principal place of business in Bentonville, Arkansas. They do business throughout the United States and California selling pet food products, including Waggin' Trail Chicken Jerky treats.

10. Does 1 through 10 are listed and upon information and belief, there are other culpable defendants involved in the production and distribution of the contaminated pet food products. Plaintiff will seek leave to amend when these other entities are ascertained.

## JURISDICTION

11. The Court has original jurisdiction over this complaint pursuant to Section 28 U.S.C. S 1332 (a) because (a) plaintiff and numerous members of her putative class are citizens of states different from those of which Nestle Purina, Waggin' Train and Sam's Club is a citizen; (b) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (c) none of the jurisdictional exceptions contained in 28 U.S,C. S 1332 (d)(4)-(5) applies to this instant action.

## VENUE

12. Venue is proper in this District pursuant to 28 U.S.C. S 1391 (b) and (c). The defendants transact business in this District, and many of the acts constituting the violations of law alleged herein occurred in this District.

## FACTS

13. Defendants Waggin' Train and Nestle Purina hold themselves out to consumers and the general public as manufactures as safe, nutritious and high-quality dog food.

14. These defendants, Waggin Train and Nestle Purina make numerous express warranties about the quality of their food and their manufacturing facilities.

15. For example, Nestle Purina represents that its chicken jerky, product is "wholesome", "nutritious and great tasting" and that the purchase should "feel confident that you are giving your dog a wholesome treat that is both healthy and delicious".

16. Nestle Purina intended for pet owners to believe that the statements made in its packaging were true and that its pet food was first-rate quality.

17. Based on hundreds of complaints to the FDA, it had issues warnings, as recently as November 18, 2011 about dog illnesses related to consumption of chicken jerk dog treats made in China.

18. In spite of the representation on the packaging, the chicken jerky product distributed and sold by Nestle Purina were not wholesome, nutritious and or healthy for the pets but instead were harmful, dangerous and fatal for pets. The packaging did not warn of any danger from feeding its contents to dogs.

19. Waggin' Train and Nestle Purina have marketed their products and continued to distribute their products without determining whether the products are in fact safe for the purposes intended and without determining whether they will have a detrimental and or lethal affect on dogs.

20. Waggin' Trail and Nestle Purina marketed the chicken jerky treats without determining the safety of the product.

### FACTS RELATING TO PLAINTIFF JOHNSON

21. From sometime at or about January 2011 Plaintiff Johnson began buying packages of Waggin' Train Chicken Jerky treats from Wal-Mart Stores, Inc. and its wholly owned subsidiary, Sam's Club. She purchased the subject product for her 6 year old dog, Sterling.

22. Sterling consumed the treats following that date.

23. Sterling began having symptoms after ingesting these chicken jerky treats produced by Waggin' Train and Nestle Purina. His symptoms began with fatigue and lethargy as well as neurological related disorders, including but not limited to vertigo. Sterling would also appear not to have control of his rear legs and would hold his head down as if he could not pick it up. His other symptoms included constant excessive thirst, excessive drinking of water, vomiting and urination.

24. Sterling continued to have these symptoms but subsequently resolved after several weeks on or about September 12, 2012.

25. Prior to that date, Johnson expended several hundred dollars in veterinary bills for assorted consultations, x-rays and evaluations.

## CLASS ALLEGATIONS

26. Johnson brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "class") consisting of herself and all others who purchased chicken jerky pet food in the United States sold and distributed by Waggin' Train and Nestle Purina.

27. Upon information and belief, the Waggin' Train Chicken Jerky treats were produced by JOC Greatwall Corporation, Ltd., of Nanjing, China.

28. Upon information and belief, there are over 100,000 class members such that joinder of members is impracticable,

29. Common questions of law and fact exist as to all class members and

predominate over questions affecting individual members. Common questions for the class include the following:

(a) Whether Waggin' Train and Nestle Purina act negligently in failing to prevent contamination of its pet food?

(b) Whether Waggin' Train and Nestle Purina acted negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

(c) Whether Waggin' Train and Nestle Purina breached the express and/or implied warranties relating to the sale of its pet food?

(d) Whether Sam's Club, Inc. acted negligently in failing to remove this product from its shelves after being alerted of the FDA warnings?

30. Johnson will fairly and adequately protect the interests of the class. Her claims are typical of the claims of the class members and she has retained counsel competent and experienced in class action litigation.

31. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all class members is impracticable, and (b) many class members cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

## COUNT I
### (BREACH OF WARRANTY)

32. Plaintiff incorporates by reference all the foregoing allegations.

33. Waggin' Train and Nestle Purina has breached express warranties to Plaintiff and violated the Uniform Commercial Code.

34. Waggin' Train and Nestle Purina has breached implied warranties to Plaintiff and

violated the Uniform Commercial Code.

35. Waggin Train and Nestle Purina has breached the implied warranty of merchantability.

36. As a proximate cause of this misconduct, plaintiff and the class suffered actual damages, including without limitation the cost of the contaminated pet food and resulting veterinary bills.

## COUNT II
## (NEGLIGENCE)

37. Plaintiff incorporates by reference all of the foregoing allegations.

38. Waggin' Trail and Nestle Purina owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

39. Waggin' Train and Nestle Purina breached this duty by failing to exercise care in the production, distribution and sale of the contaminated dangerous pet food described herein.

40. Waggin' Train and Nestle Purina breached this duty by failing timely and effectively to warn plaintiff and the class of dangers of its chicken jerky treats even after it had actual knowledge of the fact though hundreds of complaints to the FDA and its was aware of the resulting risks.

41. As a proximate cause thereof, plaintiff and the class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

WHEREFORE, Plaintiff, on behalf of herself and the class, prays for the following relief:

1. An order certifying the class as defined above;

2. An award of actual damages;

3. Appropriate injunctive relief;

4. Medical monitoring damages;

5. Reasonable attorneys' fees and costs; and

6. Such further and other relief the Court deems just and appropriate.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted,

Dated: September 8, 2012

THE TERRELL LAW GROUP

*Reginald Terrell*
REGINALD TERRELL, ESQ.

REGINALD TERRELL, ESQ.
THE TERRELL LAW GROUP
Post Office Box 13315, PMB #148
Oakland, California 94661
Telephone: (510) 237-9700
Facsimile: (510) 237-4616

SYDNEY JAY HALL
LAW OFFICES OF SYDNEY JAY HALL
1308 Old Bayshore Highway, #220
Burlingame, California 94010
Telephone: (650) 342-1830
Facsimile: (650) 342-6344
Email: Sydneyhalllaw@yahoo.com